UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Hartford Accident and Indemnity
Company, et al.,

        Plaintiffs

v.

FFP Holdings, LLC, et al.,

        Defendants

Case No. 3:15-cv-377

MEMORANDUM OPINION
AND ORDER

**I. BRIEF INTRODUCTION**

This declaratory judgment action is aimed at coverage for defense, reimbursement of defense costs, or indemnity of environmental liabilities and remediation costs arising out of the Flexible Foam's[1] facility in Elkhart, Indiana. In February 2015, the EPA sought reimbursement from Flexible Foam for approximately $5.7 million dollars in remediation costs. This litigation ensued.

This matter is before me on the Insurers'[2] motion to strike policyholder evidence disclosed after the Court established discovery deadline. (Doc. No. 200). Also before me is the Policyholders'[3] opposition (Doc. No. 205), the Insurers' reply (Doc. No. 207), as well as the Policyholders' sur-reply (Doc. No. 212). For the reasons stated below, the motion to strike is denied.

---

[1] "Flexible Foam" refers to FFP Holdings LLC, Moeller Land 7 Cattle Co., and Ohio Decorative Products, LLC.
[2] As noted by the movants, the "Insurers" include American Casualty Company of Reading, PA, Continental Casualty Company, National Fire Insurance Company of Hartford, Transportation Insurance Company, Valley Forge Insurance company (collectively "CNA"), and Westchester Fire Insurance Company ("Westchester").

[3] As noted by the movants, the "Policyholders" include FFP Holdings, LLC, Ohio Decorative Products, LLC, and Moeller Land & Cattle, Inc.

## II. Discussion

The Insurers move to strike evidence they contend the Policyholders failed to produce prior to the October 31, 2016 discovery deadline in violation of Fed. R. Civ. P. 26(e)(1)(A). As a result, they request that I implement the mandatory sanction provision under Fed. R. Civ. P. 37(c)(1) for this violation. Specifically, they move to strike: (1) Policyholders' December 12, 2016 supplemental answers to CNA interrogatories 5, 8, and 10 and Winchester 12-13; (2) John Stepelton deposition exhibits 3, 9, and 24-26; and (3) Stepelton deposition testimony on these issues, including related documents.

FFP opposes the motion to strike because the parties agreed to take the Stepelton deposition (FFP's Rule 30(b)(6) designee) on November 1, 2016, beyond the discovery deadline of October 31, 2016. It is Stepelton's testimony from that deposition which is at the heart of this dispute.

Under Fed. R. Civ. P. 26(e)(1)(A):

> **In General**. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission— must supplement or correct its disclosure or response:
>
> **(A)** in a timely manner if the party learns that some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

At the Case Management Conference in July 2015, I assigned this case to the complex track and it was agreed to conduct discovery in phases:

> Phase 1 discovery will be limited to identifying which state's substantive law applies to the insurance policies issued to Flexible Foam and whether the Insurers' policies' pollution exclusions preclude coverage under the relevant state's substantive law for Flexible Foam's alleged environmental liabilities at the Site.

> Phase 2 discovery will include, if appropriate, discovery on the Insurers' other potentially-available coverage defenses under the policies issued to Flexible Foam, as well as Flexible Foam's potential exposure from its alleged environmental liabilities at the Site. Phase 2 discovery may not begin and the schedule for that phase of discovery will not be set until after a ruling on any Phase 1 dispositive motions has been issued.

(Doc. No. 100 at ¶ 4(b)). A deadline for Phase 1 discovery was established at that initial conference. This discovery deadline was the subject of multiple unopposed extensions. On September 1, 2016, I extended the discovery deadline for the fourth time to October 31, 2016. (Doc. No. 188).

On September 30, 2016, the Insurers noticed the deposition for FFP's 30(b)(6) designee at a mutually-agreed upon date, time, and location. (Doc. No. 190). Behind the scenes, counsel for both groups had been working to secure a date for the deposition of FFP's 30(b)(6) witness.

On September 27, 2016, counsel for FFP offered dates of October 21, November 1 or 2. (Doc. No. 201-23). Three days later, counsel for the Insurers suggested the November 1 and 2 dates to the extent it was agreeable to all adding, "[t]his would be with agreement of all parties to take a deposition outside the 10/31/16 date currently governing Phase I discovery." (*Id.*)

A few weeks later, counsel for the CNA insurers confirmed these dates in a letter to opposing counsel:

> Pursuant to email confirmations earlier this month, all parties have agreed to take the Rule 30(b)(6) depositions of policyholders and fact deposition of John Stepelton on November 1 and 2, 2016. . . .
>
> The CNA Insurers continue to reserve their rights to depose other witnesses whose deposition were noticed on July 15, 2016. Per our discussions, we are happy to avoid those depositions depending upon the information and testimony gained in the November 1 and November 2 depositions. We also reserve our right to seek additional discovery as necessary, recognizing that taking these depositions beyond the October 31, 2016 is an accommodation to all parties.

(Doc. No. 201-24).

There is no dispute that prior to the November 1 Stepelton deposition, the Policyholders consistently admitted in nearly all their pleadings and verified responses to discovery requests that FFP Holdings, LLC, Ohio Decorative Products, LLC, and Moeller Land & Cattle Co., were headquartered in Spencerville, Ohio. At the November 1, 2016 deposition of FFP's Rule 30(b)(6) designee, John Stepelton, the following exchange took place:

> Q: Okay. And then for Flexible Foam, Flexible Foam's headquarters were located in Spencerville [Ohio] as well; correct?
>
> A: No.
>
> Q: No?
>
> A: No. Flexible Foam's headquarters, Flexible Foam's headquarters initially, when they initially purchased, when they . . . Actually the way Flexible Foam came was it was a trade, and when that occurred in the early '70s they ended up with a plant in Chattanooga and a bunch of fabrication plants around the country.
>
> Q: Okay.
>
> A: Chattanooga was considered the headquarters. Some time in the mid '80s, I'm going to say '87, '88 they sold Flexible Foam Chattanooga to a group of employees from Vita Foam, salesmen. And then I think one of our salesman was also part of that. I think there was five gentlemen. And they attempted to operate the old Flexible Foam Chattanooga, they actually renamed it to Nu-Foam Products. They were unsuccessful, they failed, and what happened was Mr. Moeller took the company back.
>
> Q: Okay.
>
> A: But it was under the new name Nu-Foam Products. But during that time frame the designated headquarters for Flexible Foam was Elkhart, Indiana, because for various reasons. It was a, it was considered you know, there was a lot of important duties, a lot of functions that Indiana had performed for all the entity Flexible Foam groups. We had a lot of assets in Indiana. We had a lot of payroll in Indiana compared to other plants. We had a trucking hub. As a matter of fact, all the trucking records, all the records that every truck driver, and all the Flexible Foam plants from let's say 1988 or 9 in that time frame were maintained in Elkhart, Indiana. . . .

(Doc. No. 201-25 at pp. 8).

During this deposition, the Policyholders withdrew their relevance objections and produced five exhibits related to employee payroll and operation dates. Previously, the Policyholders objected

4

to relevance of this information as overbroad and "not the type of information typically examined in Ohio's choice-of-law analysis." (Doc. No. 201-1 at p. 5). According to the Policyholders, these were "documents used to prepare [the] Rule 30(b)(6) witness [which] were given to the Insurers for the first time at the deposition." (Doc. No. 205 at p. 2).

The Policyholders state "FFP discovered that it had previously misunderstood Insurers' interrogatories during the process of compiling and reviewing information to prepare for Stepleton's Rule 30(b)(6) deposition. This discovery occurred just days before the deposition." (*Id.* at p. 7).

Here, FFP's 30(b)(6) deponent gave an answer which was contrary to previous interrogatory responses during his deposition on November 1, 2016. The Insurers were given an opportunity to cross-examine the witness but declined. The Policyholders also supplemented their previous interrogatory answers on December 12, 2016, to reflect the change in testimony.

The parties agreed to take this deposition outside of the deadline which happened to be the October 31, 2016. The Insurers' October 14, 2016 correspondence specifically reserved their right to "seek additional discovery as necessary." As the parties effectively agreed to extend the discovery deadline, the 30(b)(6) witnesses' change of position on a previous interrogatory was not outside the Phase 1 discovery timeframe. Additionally, the Insurers' argument that the supplementation of interrogatories in mid-December 2016 was untimely is unpersuasive. Absent experts, "[t]he duty to supplement and correct generally does not extend to disclosures made as part of deposition testimony." 6 Moore's Federal Practice § 26.131[1] (3d. 2017). As I find there was no violation of Rule 26(e)(1)(A), it is unnecessary to engage in Rule 37(c)(1) analysis.

Alternatively, the Insurers contend FFP is judicially estopped from changing its position taken in *Carson v. Flexible Foam Products, Inc.*, 2008 WL 1901727 (W.D. Wis. 2008). In that litigation, Flexible Foam Products Inc. represented and the district court acknowledged as fact that FFP, Inc. "has its principal place of business in Spencerville, Ohio." (*Id.*) Here, the Policyholders dispute the

5

arguments as a premature substantive attack on evidence in what is essentially a discovery dispute. I agree.

Judicial estoppel is an equitable doctrine which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another case." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001), citing *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000). It is intended to protect the integrity of the judicial process. *Id.* The doctrine "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Lorillard Tobacco Co. v. Chester, Wilcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008), quoting, *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d at 1218 (6th Cir. 1990).

It is my view that application of judicial estoppel is premature. Given my ruling on the Insurers' motion, this litigation may necessitate additional discovery. Currently, there are no dispositive motion deadlines in place. The Insurers' arguments are more appropriately suited to a dispositive motion. To make a determination at this juncture of the litigation in advance of the substantive arguments, is contrary to the court's duty of determining cases on the merits.

### III. CONCLUSION

Accordingly, the Insurers' motion to strike policyholder evidence (Doc. No. 200) is denied.

So Ordered.

                                        s/ Jeffrey J. Helmick
                                        United States District Judge