UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Hartford Accident and Indemnity
Company, et al.,                                              Case No.  3:15-cv-377

                          Plaintiffs,

            v.                                                MEMORANDUM OPINION
                                                                  AND ORDER

FFP Holdings LLC, et al.,

                          Defendants.

## I.  INTRODUCTION

This litigation arises from an insurance coverage dispute concerning groundwater

contamination in an area near a manufacturing plant in Elkhart, Indiana.  The remaining parties in

this case have filed motions for summary judgment on the dispositive issues of (i) whether Ohio or

Indiana law applies to pollution exclusions in applicable liability insurance policies and (ii) whether

those exclusions are enforceable.  (Doc. No. 217, 219, and 223).  The parties have completed

briefing on these motions.  For the reasons stated below, I grant the insurers' motions for summary

judgment.

## II.      BACKGROUND

In 1986, Flexible Foam Products, Inc., purchased substantially all of the assets of another

polyurethane foam manufacturer known as Indiana Foam, Inc.  These assets included a

manufacturing plant located at 1900 West Lusher in Elkhart, Indiana.  Chemical runoff from that

plant unfortunately made its way into the groundwater nearby.  Contamination in the groundwater

first was identified in the mid-1980s and the Environmental Protection Agency ("EPA") added the Elkhart groundwater site to its National Priorities List in 2008.

The EPA notified Flexible Foam in May 2011 that the EPA had determined the Lusher plant was responsible for the groundwater contamination. The EPA subsequently sought reimbursement for costs incurred, and expected to be incurred in the future, in remediating the pollution.

FFP Holdings, LLC (as successor in interest to Flexible Foam Products, Inc.), Ohio Decorative Products, LLC, and Moeller Land & Cattle Co., Inc. (collectively, "Policyholders"), seek to recover these costs by invoking coverage under insurance policies issued by American Casualty Company of Reading, PA, Continental Casualty Company, National Fire Insurance Company of Hartford, Transportation Insurance Company, and Valley Forge Insurance Company (collectively, "CNA"), and excess insurance policies issued by Westchester Fire Insurance Company ("Westchester"). FFP Holdings was wholly owned by Ohio Decorative Products, LLC, which manufactured metal parts for appliances and automobiles. Moeller Land & Cattle Co. owned manufacturing plants which it leased to Flexible Foam and Flexible Foam's affiliates.

CNA issued a total of 35 policies to one or more of the Policyholders between 1983 and 2014. (*See* Doc. No. 221-1). The Policyholders seek coverage from CNA under ten policies in effect between 2000 and 2011, (Doc. No. 217-1 at 11-12), and from Westchester under seven excess policies in effect between 1985 and 1994. (Doc. No. 223 at 12-13). Each of these policies contained a pollution exclusion. The CNA policies exclude coverage for bodily injury and property damage arising out of the release of toxic chemicals, contaminants, or pollutants into the land, air, or water.[1]

---

[1] Some of these policies include a more-limited exclusion provision which provided that the exclusion did not apply if the release of pollutants was sudden and accidental. (*See* Doc. No. 221 at 34). The Policyholders do not argue the contamination was the result of a sudden and accidental release.

(*See, e.g.,* Doc. No. 221-37 at 5-6).  The Westchester policies contain a similar exclusion to coverage for liability arising out of the release of pollutants.  (*See, e.g.,* Doc. No. 215-1 at 16).

The parties' dispute centers on which state's law applies to the insurance contracts – Ohio's or Indiana's.  Under Ohio law, the pollution exclusions are enforceable, and the Policyholders are not entitled to coverage under either the CNA or the Westchester policies.  Under Indiana law, the pollution exclusions are unenforceable.  Both CNA and Westchester seek summary judgment on the basis that the pollution exclusions are enforceable and bar the Policyholders' requests for coverage.  (Doc. No. 219 and 223).  The Policyholders seek summary judgment against CNA but not Westchester.  (Doc. No. 217).

### III.   STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV.   ANALYSIS

#### A.   APPLICABLE LAW

A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017).  Where conflicting laws of two or more states

3

might apply to the interpretation of a liability insurance policy, Ohio determines which state's law governs the dispute by applying Section 188 of the Restatement (Second) of Conflicts. *See Gries Sports Ent., Inc. v. Modell,* 473 N.E.2d 807 (Ohio 1984) and *Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568 (Ohio 1986).

Section 188 includes the following factors as those most relevant to determining which state's law applies to a particular contract:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2) (1971); *see Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir. 1992) ("Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it.").

In insurance cases, the Restatement offers a way to further narrow the field of the potentially relevant contacts.  In such cases, courts seek to determine which state "the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which case the local law of the other state will be applied."  Restatement (Second) of Conflict of Laws § 193.

Where the parties have not included a choice-of-law provision, and their intentions with respect to which state's law should apply "cannot be ascertained, it may at least be said, subject perhaps to rare exceptions, that they expected that the provisions of the contract would be binding upon them."  Restatement (Second) of Conflict of Laws § 188, comment b.  *See also Ohayon v. Safeco Ins. Co. of Illinois*, 747 N.E.2d 206, 212 (Ohio 2001) ("The Restatement's contractual choice-of-law rules will protect the justified expectations of the parties who bargain for those terms.").

4

1.      **CNA Policies – § 188 Factors**

      a.      **The Place of Contracting**

As the Policyholders note, the phrase "the place of contracting" is used to refer to "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect . . . ."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  CNA argues the place of contracting is Ohio, because the CNA policies were negotiated through Ohio-based brokers by Ohio-based employees of the Policyholders and the premiums for the CNA policies were paid from Ohio.  (*See* Doc. No. 221 at 20-24, 27).  The Policyholders contend there is no conclusive evidence as to what the last necessary act was and this factor is "relatively insignificant . . . [so it] is entitled to little or no weight . . . ."  (Doc. No. 217-1 at 25).

Even if § 188 suggests the place of contracting does little on its own to move the needle toward one state's law over another, Ohio has adopted that factor as part of the contractual choice-of-law analysis.  Moreover, it is not "impossible" to determine the place of contracting in this case.  (Doc. No. 232 at 19).  The Policyholders do not dispute the insurance agencies that procured the policies were based in Ohio, the insurance premiums were paid from Ohio, and its employees who sought the policies – and who would have signed any required term sheet or policy acknowledgment, as the Policyholders hypothesize – were based in Ohio.  (*See* Doc. No. 217-1 at 25).  Whatever the "last necessary act" was to form a contract between CNA and the Policyholders, there is no genuine dispute that it occurred in Ohio.

      b.      **Place of Negotiation**

The state where the parties "negotiate and agree on the terms of their contract . . . has an obvious interest in the conduct of the negotiations and in the agreement reached."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  This factor has less importance, however, "when there is

no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." *Id.*

CNA argues this factor also points toward the applicability of Ohio law, because the Policyholders' employees who were primarily responsible for obtaining the insurance policies were in Ohio, as were the insurance brokers retained by the Policyholders and the CNA underwriting offices. (*See, e.g.,* Doc. No. 230 at 21). The Policyholders argue this factor is unclear because (i) the Policyholders' president, Charles Moeller, typically was in Florida at his winter home when the insurance policies were purchased and when John Stepelton, an executive and officer with FFP and Ohio Decorative Products who was involved with the procurement of insurance policies, presented the insurance proposals to him; (ii) the policies do not uniformly say they were underwritten by Ohio-based offices; (iii) there is no evidence anyone at the branch offices negotiated the policies; and (iv) there was no evidence the policies were negotiated in person. (*See, e.g.,* Doc. No. 217-1 at 25-26; Doc. No. 232 at 17-18).

The Policyholders' arguments are not persuasive. Even if Moeller was in Florida when Stepelton communicated with him about the policies, there is no evidence Moeller was involved in negotiations for the policies, either while he was in Florida or while he was in Ohio. (Doc. No. 221-8 at 18 ("Stepelton Rule 30(b)(6) deposition")).

Further, the policies which include a specific reference to an underwriting office refer to Ohio-based offices. Policyholders rely on their Ohio-based insurance brokers to procure insurance policies on their behalf, (Doc. No. 221-8 at 19), and there is no evidence that the policies at issue in this case were underwritten by an office outside of Ohio. While one policy refers to an Illinois underwriter, (Doc. No. 221-43), the Policyholders do not dispute that they do not seek coverage under this policy. (*See* Doc. No. 236 at 25, n.13).

Finally, while the parties may not have met in person to negotiate the policies, the evidence demonstrates that the telephone calls, emails, faxes, and mailings were made and received by individuals in Ohio.  Though the place-of-negotiation factor may be entitled to less weight than other factors in the specific circumstances of this case, that factor points toward the application of Ohio law.

### c. The Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties

This factor considers "places of enduring relationship to the parties," and takes on relative degrees of importance in correlation to "the issue involved and . . . the extent to which [these places] are grouped with other contacts."  Restatement (Second) of Conflict of Laws § 188 cmt. e.  "The fact that one of the parties is domiciled or does business in a particular state assumes greater importance when combined with other contacts, such as that this state is the place of contracting or of performance . . . ."  *Id.*

American Casualty Company, Continental Casualty Company, National Fire Insurance Company, Transportation Insurance Company, and Valley Forge Insurance Company are domiciled or incorporated in Illinois and Pennsylvania.  The parties do not dispute that these contacts are entitled to little or no weight in the choice-of-law analysis.  (Doc. No. 217-1 at 26; Doc. No. 230 at 15-19).

FFP Holdings, Ohio Decorative Products, and Moeller Land & Cattle each are incorporated or formed in Ohio.  There appears to be no dispute that Ohio Decorative Products and Moeller Land & Cattle have their principal places of business in Ohio.  The Policyholders argue, however, that FFP Holdings has its principal place of business in Elkhart, Indiana:

> [I]ts Elkhart plant was considered to be the company's headquarters . . . because company-wide engineering, accounting, and research and development work was performed there, because it served as the company's trucking hub, and because it and its fellow Elkhart plant were unique among the company's other facilities in terms of their payroll-processing and accounts-payable systems and banking relationships.

(Doc. No. 217-1 at 27).

CNA strongly disputes this contention. CNA first argues the Policyholders are judicially estopped from claiming Indiana is FFP Holdings' principal place of business because they previously have repeatedly represented in court and tax filings that FFP Holdings' principal place of business is Spencerville, Ohio. (*See, e.g.,* Doc. No. 230 at 15-19). CNA also argues the evidence demonstrates the Spencerville location accounted for a greater percentage of the Policyholders' economic activity than the Elkhart location:

> Even if the Court were to consider the amount of economic activity at each of Policyholders' operation sites, that evidence shows that the Spencerville site is highest and that Elkhart is never more than 12% of total sales. Accounting records demonstrate that Flexible Foam's Elkhart, Indiana operation was not "principal" in any sense, but instead only was a fraction of Flexible Foam's total manufacturing costs and sales income. Manufacturing costs and sales income were higher at Flexible Foam's Spencerville, Ohio location than in Elkhart, Indiana in every year except 2008-2009, with only marginal difference in those two years. . . . Moreover, the Elkhart site accounted for only 11.3% and 11.4% of total sales among 13 sites in 10 states in those two years. . . . Even in the 2000- 2011 time frame, these sites were spread nationwide in Ohio, Indiana, Texas, Florida, Colorado, Wisconsin, Pennsylvania, Mississippi, Washington, and North Carolina. . . . Otherwise, the Spencerville, Ohio location had the highest cost and sales of any Flexible Foam location during every other year.

(Doc. No. 236 at 32-33).

The Policyholders concede they previously have represented that FFP Holdings' principal place of business is in Ohio for purposes of diversity jurisdiction and venue, but argue those purposes are distinguishable from the principal place of business for choice-of-law purposes. (Doc. No. 232 at 23-24).

The Policyholders do not cite to any opinions in which a court has drawn the distinction the Policyholders seek to rely upon, and their general statements that FFP Holdings' "actual business activity was principally conducted in Indiana" are inadequate to shift the focus from Ohio. While the Policyholders take issue with CNA's calculation of the percentage of sales attributable to each state, the evidence demonstrates the Policyholders' economic activity spanned up to 10 states and

that the total sales from the two Indiana facilities only marginally exceeded the next-highest state, if at all. (*See, e.g.,* Doc. No. 230-14 at 30).

Moreover, the Policyholders fail to reconcile its assertion that "company-wide engineering, accounting, and research and development work" was performed in Indiana, (Doc. No. 232 at 25), with its admission "that [FFP Holdings'] trade or business was principally directed or managed from Ohio." (*Id.* at 24). That is, either FFP Holdings' officers "direct[ed], control[led], and coordinate[d]" the company's activities from Ohio, or they did not. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The Policyholders have not shown the "company-wide" operations in Indiana are greater in scope or importance than the Ohio operations they previously acknowledged constitute the "main[ and] prominent" operations of the company. *See id.* at 93 (construing 28 U.S.C. § 1332(c)(1) and stating "[t]he word 'place' is in the singular, not the plural.").

The Policyholders fail to establish that its domicile or principal place of business for choice-of-law purposes differs from its domicile for jurisdictional or tax purposes. I conclude there is no genuine dispute that the Policyholders are incorporated or formed, and have their principal places of business, in Ohio. Therefore, this factor also favors the application of Ohio law.

        **d.**     **The Principal Location of the Insured Risk, the Place of Performance, and the Location of Subject Matter of the Contract**

Section 188 states that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189- 199 and 203." Restatement (Second) of Conflict of Laws § 188(3). In the case of "a contract of fire, surety[,] or casualty insurance," Section 193 generally directs that the law of the state containing "the principal location of the insured risk." Restatement (Second) of Conflict of Laws § 193. If § 193 permits a court to identify the principal location of the insured risk, the local law of that location displaces the local law of the state identified pursuant to § 188(3).

The Policyholders contend Indiana was the principal location of the insured risk because FFP Holdings "had many more insured facilities than either [Ohio Decorative Products or Moeller Land & Cattle], greater fixed assets, greater revenue, greater net income, greater expenses, and many more employees . . . [and] Indiana was the center of [FFP Holdings'] operations."  (Doc. No. 217-1 at 19).  The Policyholders point to the engineering, accounting, and research and development work performed at the Lusher Avenue plant, its status as the company's trucking hub, and its separate payroll system.  (*Id.* at 20-21).  The Policyholders also argue that, even if § 193 does not compel the application of Indiana law, that law should apply under § 188 because Indiana is the location of the subject matter of the contract and the place of performance.  (Doc. No. 217-1 at 21-24).

In effect, the Policyholders present a two-pronged argument: (1) the Indiana plants accounted for the largest portion of FFP Holdings' business, and FFP Holdings accounted for the largest portion of the Policyholders' business, during the period at issue, so, under § 193, Indiana law applies to the CNA insurance policies; and (2) Indiana, as the place where the environmental cleanup is occurring, is the location of the subject matter of the contract and the place of performance as to this particular incident, so, under § 188, Indiana law applies.  I am not persuaded by either prong.

The first prong runs counter to the multiple-risk policy laid out in the comments to § 193. The location of the insured risk is entitled to the greatest weight in the analysis "provided that the risk can be located, at least principally, in a single state."  Restatement (Second) of Conflict of Laws § 193 cmt. b.  The principle location of the risk cannot be determined or "has less significance . . . where the policy covers a group of risks that are scattered throughout two or more states."  *Id.*

The Policyholders do not, and cannot, dispute that the CNA policies cover multiple risks scattered across no fewer than ten states – Colorado, Florida, Indiana, Mississippi, North Carolina, Ohio, Texas, Washington, and Wisconsin.  Further, the Policyholders concede Indiana was not the

only state in which FFP Holdings operated two facilities at the same time, as it operated two facilities in Wisconsin for three years, and two facilities in Mississippi for five years, between 2000-2011. (Doc. No. 217-1 at 19).

It perhaps is worth pausing here to reiterate that the CNA policies were general commercial insurance policies, covering personal and advertising injuries, property damage, medical expenses, fire damage, and liability arising out of the Policyholders' employee benefits program. (*See, e.g.,* Doc. No. 221-45). Losses associated with these risks could arise from any of the Policyholders' offices or facilities. The Policyholders do not identify a basis for concluding Indiana law should apply to insurance coverage determinations in all of these areas.

This argument is derived in part from comment f to § 193. Comment f describes a hypothetical scenario in which a single policy incorporates special statutory forms for fire insurance on houses the insured owns in three different states. "Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk." Restatement (Second) of Conflict of Laws § 193 cmt. f.

The Policyholders, however, seek to go even further than this scenario – in effect proposing that the pollution exclusion would be evaluated differently as to the different facilities in each of the ten states, despite the fact that none of the policies include state-specific forms, nor do the policies attempt to treat the pollution provisions as though those provisions actually were separate mini-insurance policies. *See, e.g., Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.,* 590 N.E.2d 33, 37 (Ohio Ct. App. 1990) (rejecting application of § 193 and applying § 188 where policy at issue "did not set forth a principal location, or the location of a single insured risk, but, rather, expressly indicated that the insurance extended to 'all locations' of the insureds, and for 'all operations'").

"The factors enumerated in Section 188 are keyed to the justifiable expectations of *the parties* to the contract, not to the ultimate benefit of one party over another." *Ohayon,* 747 N.E.2d at 211

11

(emphasis in original).  Section 188 identifies "the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue . . . ."  Restatement (Second) of Conflict of Laws § 188(2).  If accepted, the Policyholders' arguments would require me to dismiss "the relevant policies of [the other nine] interested states, . . .the protection of [the parties'] justified expectations, . . . [the principles of] certainty, predictability[,] and uniformity of result, and [the importance of] ease in the determination and application of the law to be applied."  Restatement (Second) of Conflict of Laws § 6(2).

Moreover, even if I were persuaded that the parties implicitly understood Indiana to be the principal location of the insured risk under § 193, the Restatement would counsel against applying Indiana law to invalidate the pollution exclusions.  "On occasion, a state which is not the state which the parties understood was to be the principal location of the insured risk during the term of the policy will nevertheless, with respect to the particular issue, be the state of most significant relationship to the transaction and the parties and hence the state of the applicable law.  This may be so, for example, when the contract would be invalid under the local law of the state of principal location but valid under the local law of another state with a close relation to the transaction and the parties."  Restatement (Second) of Conflict of Laws § 193 cmt. d (emphasis added).  The parties repeatedly agreed to include the Ohio pollution exclusion – a provision that would have been void from the start under Indiana law – in the policies.

Thus, under the circumstances of this case, the risks covered by the CNA policies cannot be located in a single state and the rule stated in § 193 does not apply.

The Policyholders' reliance on *Chartis Specialty Insurance Company v. Lubrizol Corporation*, does not change my conclusion.  Unlike the CNA policies, the policy at issue in that case did not "provide blanket coverage; rather, the terms of coverage var[ied] significantly by property." *Chartis Specialty Ins. Co. v. Lubrizol Corp.*, No. 1:11 CV 369, 2013 WL 12130642, at *10 (N.D. Ohio Mar. 29, 2013).

Further, *Chartis*'s "risk-at-issue" approach extends both § 188 and Ohio law a step too far. *Id.* at \*9.  While § 188 refers to the choice-of-law determination for "an issue," it frames that inquiry through the consideration of which state's law "has the most significant relationship to the transaction and the parties under the principles stated in § 6."  Restatement (Second) of Conflict of Laws § 188(1).  Taken to its logical conclusion, the *Chartis* approach would require the application of the law of no fewer than <u>twelve different states</u>[2] to the policies underlying this case, depending on which element of the contracts was the subject of a dispute.  Such a result would run counter to the principles stated in § 6, including protection of the parties' justified expectations, certainty, and predictability.  Restatement (Second) of Conflict of Laws § 6(2)(d), (f).

The *Chartis* court also supported its "risk-at-issue" approach by noting "Ohio follows the doctrine of *dépeçage*, which allows for the application of different states' laws to different claims." *Chartis*, 2013 WL 12130642, at \*9.  Caselaw demonstrates, however, that Ohio courts may apply different states' laws to different areas of law, not that Ohio courts apply a different state's law to each cause of action within an area of law.  *See, e.g., Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 861 N.E.2d 524, 527-28 (Ohio 2007) (holding the choice-of-law analysis for the insured's workers' compensation claims did not control the choice of law for the insured's tort claims); *Ohayon*, 747 N.E.2d at 209 ("[T]he Restatement and courts emphasize different factors when resolving choice-of-law issues in these contextually distinct legal fields.").

---

[2]   The 10 states in which FFP Holdings operated a facility between 2000-2011, and Illinois and Pennsylvania, where the CNA insurers had their home offices.  The Policyholders identified a total of 51 locations operated in 22 states during the approximately 30 years covered by policies provided to the Policyholders by some or all of the insurers.  (Doc. No. 221-11 at 6-9).  CNA takes issue with the Policyholders' implication that only the policies issued between 2000-2011 are in dispute, as CNA seeks summary judgment on all policies issued from 1986 through 2014.  (Doc. No. 236 at 13-14).

Because § 193 does not control the choice-of-law analysis, what remains is the determination of the place of performance,[3] and here the second prong of the Policyholders' argument fares no better than the first.

In an insurance coverage dispute, a court must decide whether, and to what extent, the insurer is required to provide coverage for its insured's loss. This question involves a determination of the parties' rights and responsibilities under the contract to which they agreed. Likewise, in these circumstances, § 188(2)(c) focuses on what the insurance policy requires and not on the location of the underlying incident which gave rise to the coverage dispute or the law which applies to that incident. *Ohayon*, 747 N.E.2d at 213 ("The resolution of these stacking and setoff [of uninsured motorist benefits] issues is a coverage issue, separate and independent from the measure of damages assessed to the tortfeasor."). *See also Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 827 (6th Cir. 1996) ("Though the case comes to us because of a "triggering event" that occurred in Ohio, . . . it ultimately concerns the interpretation of an insurance contract made in Pennsylvania." (citation omitted)).

"[T]he place of performance of an insurance policy is the place of the payment of insurance benefits." *Allstate Fire & Cas. Ins. Co. v. Moore*, 993 N.E.2d 429, 436 (Ohio Ct. App. 2013) (citation and internal quotation marks omitted). Under the CNA policies, any insurance benefits would be paid to the Ohio-based Policyholders in Ohio.

Relying on two pre-*Ohayon* cases – *Morton International, Inc. v. Harbor Insurance Co.*, 607 N.E.2d 28 (Ohio Ct. App. 1992), and *Morton International, Inc. v. Aetna Casualty & Surety Co.*, 666 N.E.2d 1163

---

[3] To the extent that the "principal location of the insured risk" differs from the "location of the subject matter of the contract", § 188(2)(d), I conclude the latter factor favors the application of Ohio law, because the contracts insure the Policyholders' assets in Ohio in addition to the day-to-day operations at their various facilities. The extensive overlap between these two concepts, however, means the "location of the subject matter" factor includes contacts to all of those various states and, therefore, it has little weight under the facts of this case.

14

(Ohio Ct. App. 1995) – the Policyholders contend "when the injury for which insurance coverage is sought is property damage caused by environmental contamination, the place of that injury *is* the place of performance, and is not only relevant, [but] it is more important than any other factor." (Doc. No. 228 at 23).

Though the two *Morton* cases have not been expressly overruled, it would be anomalous to apply them in the manner necessary to reach the result the Policyholders seek. Eight years prior to the first *Morton* opinion, the Supreme Court of Ohio reiterated its rejection of the blanket rule that the place of injury was controlling in the tort choice-of-law analysis. *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 288-89 (Ohio 1984). In *Ohayon*, the court rejected the application of the law of the state (Pennsylvania) in which the coverage-triggering event (a car accident) occurred, because the coverage dispute involved "the nature and extent of the rights and duties created" under an insurance contract the parties agreed to in Ohio. *Ohayon*, 747 N.E.2d at 214.

Neither § 188 nor precedent from the Supreme Court of Ohio carve out different treatment for environmental claims where the parties have not negotiated for such a result. *Cf. Meijer, Inc. v. Gen. Star Indem. Co.*, 61 F.3d 903, *7 (6th Cir. 1995) (unreported table decision) (Where a policy insures against multiple risks which are located in multiple states and subject to different statutes, the parties should include provisions incorporating "the different statutes of the states involved . . . [if they desire that] the policy would be treated separately for each state.").

### e.    Ohio Law Applies to the CNA Policies

Thus, the factors described in § 188 point toward the application of Ohio law to the CNA policies. In particular, Ohio is both the place of negotiation and the place of performance with regard to these insurance policies, and § 193 does not direct the application of another state's law. *See* Restatement (Second) of Conflict of Laws § 188(3).

2.      **Westchester Policies – § 188 Factors**

Westchester and the Policyholders disagree on the proper scope of coverage under seven excess policies issued between 1985 and 1994.  Westchester argues either Ohio or Tennessee law applies to the policies and that under the law of either of those states, the pollution exclusions are enforceable.  The Policyholders assert Indiana law should apply.

Westchester incorporated into its motion for summary judgment Sections II.A., II.B, II.D, II.E, II.F, II.G, III.A, and III.B of CNA's brief in support of its summary judgment motion.  (Doc. No. 223 at 4 n.1).  Westchester asserts the same contacts that point toward the application of Ohio law to the CNA policies also support the application of Ohio law to the seven Westchester excess policies.  (*Id.* at 5).  Westchester concedes that two of the seven policies were issued to the Policyholders in Tennessee but argue that fact does not change the outcome of this case because both Ohio and Tennessee law would uphold the pollution exclusion provisions in the Westchester policies.  (*Id.*).

The Policyholders acknowledge operating 13 plants in 6 states for various durations between 1985 and 1994.  (Doc. No. 229-1 at 7-11).  Relying on *Chartis* and the two *Morton* cases, the Policyholders argue Indiana law nonetheless should apply.  I disagree, as the risks insured by the Westchester policies span multiple states and the excess policies do not provide a basis for treating each of the facilities as though it was insured under a separate policy.

Further, the Ohio connections of Westchester and the Policyholders are stronger than their connections to any other state, even if those connections are not as strong as the Ohio connections of the parties to the CNA policies.  The brokers for the Westchester policies were located in Georgia and Tennessee, meaning the negotiations for the policies took place in Ohio, Tennessee, and Georgia.  (*See* Doc. No. 233 at 21-22).  Likewise, the place of contracting for the policies is one

16

of these three states.  As I concluded above, however, the Policyholders were domiciled in Ohio and the place of performance – that is, the payment of any benefits due under the contracts – is Ohio.

I conclude Ohio has the most substantial contacts with the parties and the transaction and, therefore, Ohio law applies to the Westchester policies.

### B.   SUMMARY JUDGMENT

The parties agree that, while the choice-of-law analysis is complex, it also is outcome-determinative.  *See, e.g., Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096 (Ohio 1992) (upholding insurance policy provision excluding from coverage claims arising out of the release of pollutants unless that release was "sudden and accidental"); *GrafTech Int'l, Ltd. v. Pac. Employers Ins. Co.*, 101 N.E.3d 1271 (Ohio Ct. App. 2017) (affirming summary judgment in favor of insurer based upon pollution exclusion); *Sulphuric Acid Trading Co. v. Greenwich Ins. Co.*, 211 S.W.3d 243, 251 (Tenn. Ct. App. 2006) (same).

The Policyholders argue, however, that any judgment should extend only to the issue of coverage for FFP Holdings under the CNA policies issued between 2000 and 2011.  (Doc. No. 228 at 8-12).  They argue the EPA has not alleged Ohio Decorative Products or Moeller Land & Cattle are liable for the environmental contamination at the Lusher Street Groundwater Contamination Site and, therefore, there is not an actual controversy involving those companies sufficient to support the Court's jurisdiction under 28 U.S.C. § 2201.  CNA argues there remains an actual controversy involving Ohio Decorative Products and Moeller Land & Cattle because both entities previously owned the Lusher Avenue plant during the policy terms, (*see* Doc. No. 221-9 at 8), and thus the EPA, as well as several other private third parties, still could sue those entities under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  (Doc. No. 236 at 13-15).

17

As the Policyholders concede, this line of argument is intended to focus the choice of law analysis on "the ten policies issued by CNA between March 1, 2000 and March 1, 2011 that insured [FFP Holdings]." (Doc. No. 228 at 12). Ohio Decorative Products and Moeller Land & Cattle, along with FFP Holdings, have asserted declaratory judgment claims against CNA. (Doc. No. 120; Doc. No. 139). While they may have withdrawn their defense and indemnity requests, (Doc. No. 228-1), they have not dismissed their claims. Further, both Ohio Decorative Products and Moeller Land & Cattle seek summary judgment against CNA in pursuit of a declaration that the CNA policies do not bar their right to coverage under those policies. (Doc. No. 217-1).

Ohio Decorative Products and Moeller Land & Cattle fall within the scope of CERCLA as prior owners of the Lusher Avenue property. 42 U.S.C. § 9607(a). The essential fact necessary to establish CERCLA liability – the release of hazardous substances – already has occurred, as has the necessary basis for a CERCLA contribution claim – the expenditure of funds by a responsible party to respond to the improper release of hazardous substances. *See City of Colton v. Am. Promotional Events, Inc.-W.*, 614 F.3d 998, 1005 (9th Cir. 2010). Neither § 2201 nor CERCLA require that the EPA or a responsible party must have filed suit against Ohio Declarative Products and Moeller Land & Cattle for there to be a justiciable controversy concerning whether those companies are entitled to coverage under the CNA policies.

I conclude, pursuant to Rule 56, that the pollution exclusions in the CNA and Westchester policies bar coverage as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, I grant CNA's and Westchester's motions for summary judgment, (Doc. No. 219; Doc. No. 223), and deny the Policyholders' motion.  (Doc. No. 217).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge